UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:21-cv-24465-FAM

RICARDO ANDREU,
CARMEN CELESTRIN and
FRANCISCO MALDONADO on behalf of themselves
and all similarly situated individuals,

       Plaintiffs,

vs.

DLY CASE MANAGEMENT SERVICES, LLC,
A Florida Limited Liability Company, DAINELYS CRUZ
Individually and MAIKEL LOPEZ, SR., individually

       Defendants.
_____/

## PLAINTIFFS MOTION TO RE-OPEN CASE AND  MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT AGAINST DLY CASE MANAGEMENT SERVICES, LLC, DAINELYS CRUZ and MAIKEL LOPEZ, SR.

COMES NOW the Plaintiffs, RICARDO ANDREU, CARMEN CELESTRIN, and FRANCISCO MALDONADO (hereinafter "Plaintiffs") by and through their undersigned counsel and Pursuant to Rules 60(a) and  55(b)(2) of the Federal Rules of Civil Procedure and this Court's Order (ECF No. 21), hereby move to Reopen the case and for the entry of a Default Final Judgment for Plaintiffs against Defendants DLY CASE MANAGEMENT SERVICES, LLC, a Florida Limited Liability Company, and DAINELYS CRUZ, individually, MAIKEL LOPEZ, SR., individually, and states in support as follows:

1.   On December 28, 2021, Plaintiffs filed a Complaint for unpaid minimum wages and overtime wages, and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA"). (ECF No. 1).

1

2.  On or about January 12, 2022, Defendants were served in accordance with the requirements of Fed. R. Civ. 5(b). (See ECF No. 5, 6, 7).

3.  On or before February 11, 2022, a Clerk's default was entered by the clerk as to all Defendants due to their failure to appear or otherwise respond to the Complaint. ECF No. 9.

4.  On or about February 17, 2022, upon conferral with the undersigned, Defendants counsel filed an Unopposed Motion to Set Aside the Clerk's Default. (ECF No. 11).

5.  On March 9, 2022, Defendants finally filed their Answer and Affirmative Defenses. (ECF No. 14).

6.  On or about June 30, 2022, Defendants Counsel filed a Motion to withdraw as Counsel for Defendants. (ECF No. 25).

7.  In their Response to the Motion to Withdraw, Plaintiffs stated their opposition to the withdrawal and noted Defendants' failure to participate in this litigation even when represented. See (ECF No. 28 at ¶¶ 6-11).

8.  Furthermore, Plaintiffs stated their concerns about 1) the fact that a default had been previously vacated, and that the withdrawal would severely disrupted and prolonged the litigation; and 2) Defendants' disregard of the Court's prior Orders. Id.

9.  On August 15, 2022, this Court entered an Order Granting Motion to Withdraw as Counsel for Defendants. (ECF No. 29). The Court's Order stated, in part, "Defendants must obtain counsel by August 30, 2022, or default will be entered against Defendant DLY Case Management." Id.

10. On August 31, 2022, Plaintiffs filed a Motion to Strike Defendants Answer and Affirmative defenses and for Default Against all Defendants. ECF No. 30.

11. The Court entered an Order granting default against DLY Case Management Services. However, the Court Denied Plaintiff's Motion against individual Defendants. ECF No. 31.

12. On or about November 15, 2022, at the Calendar call, this Court entered an Order directing the Clerk to enter a Default against individual Defendants DAINELYS CRUZ, MAIKEL LOPEZ, SR., for failing to appear at the calendar call. ECF No. 35.

13. Subsequently, on or about March 23, 2023, this matter was terminated, and the case was closed without any final order or proceedings that allowed Plaintiffs to move for Default Judgment.

14. Plaintiff now requests that the Court enter an Order re-opening the case as the case was closed based on error.

15. **Conferral:** Defendants are not represented by counsel and, for that reason, no conferral was undertaken with regard to this motion.

<u>**MEMORANDUM OF LAW**</u>

### I.  <u>LEGAL STANDARD</u>

The Court may grant relief under Rule 60(a) to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." *Id*.  Here, Plaintiffs contend that closing the case reflects an inadvertent error. This error is prejudicial to the Plaintiffs in that the relevant time is from December 2018  through November 2021. The clerk, sua sponte, and without an Order, closed this case after all Defendants were defaulted but before Plaintiffs were permitted to seek the entry of Default Final Judgment. ECF No. 36. Therefore, if required to re-file their action, Defendants would benefit from their gamesmanship if Plaintiffs were precluded from pursuing this action.

3

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. A defendant who defaults "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ). A defaulting defendant, however, does not admit any facts that are pleaded insufficiently or that are mere conclusions of law. *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019) (citing *Nishimatsu*, 515 F.2d at 1206); *Transamerica Corp. v. Moniker Online Servs., LLC*, No. 09-60973, 2010 WL 1416979, at *1 (S.D. Fla. Apr. 7, 2010). Accordingly, a court must determine whether the factual allegations are well pled and present a sufficient basis for the judgment. *Id.* A default "acts as an admission by the defaulted defendant as to the well-pleaded allegations of fact in the complaint." *Murray v. Integra Prop. Services, LLC*, 16-CV-61532, 2016 WL 10932515, at *1 (S.D. Fla. Dec. 29, 2016) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citations omitted); *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief")). In other words, for a default judgment to stand, a plaintiff's complaint must properly state a claim. *Id.*; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). Therefore, before granting default judgment, "the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and

that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (quoting *Tyco Fire & Security, LLC v. Alcocer*, 218 Fed.Appx. 860, 863 (11th Cir. 2007).

## II. DEFENDANTS DID NOT PAY PLAINTIFFS MINIMUM OR OVERTIME WAGES AS REQUIRED BY THE FLSA AND FMWA

### A. LIABILITY UNDER THE FLSA

To state a claim for failure to pay minimum wage under the FLSA, a plaintiff must demonstrate that: (1) That the plaintiff was employed by Defendant during the time period involved; (2) that plaintiff was engaged in commerce or production of goods for commerce or employed by an enterprise engaged in commerce or in the production of goods in commerce; and (3) that Defendant failed to pay overtime and/o minimum wage compensation as required by law. *See Freeman v. Key Largo Volunteer Fire & Rescue Dep't., Inc.*, 494 F. App'x 940, 942 (11th Cir. 2012). But "an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

#### 1. Defendants failed to participate in this litigation

Plaintiffs' Complaint was filed on December 28, 2021. (ECF No. 1). On or about January 12, 2022, Defendants were served in accordance with the requirements of Fed. R. Civ. 5(b). See ECF No. 5, 6, 7. On or before February 11, 2022, a Clerk's default was entered by the clerk as to all Defendants due to their failure to appear or otherwise respond to the Complaint. ECF No. 9.

On or about February 17, 2022, upon conferral with the undersigned, Defendants counsel filed an Unopposed Motion to Set Aside the Clerk's Default. (ECF No. 11). On March 9, 2022, Defendants finally filed their Answer and Affirmative Defenses. (ECF No. 14). On or about June 30, 2022, Defendants Counsel filed a Motion to withdraw as Counsel for Defendants. (ECF No. 25).

5

In their Response to the Motion to Withdraw, Plaintiffs stated their opposition to the withdrawal and noted Defendants' failure to participate in this litigation even when represented. See (ECF No. 28 at ¶¶ 6-11). Furthermore, Plaintiffs stated their concerns about 1) the fact that a default had been previously vacated, and that the withdrawal would severely disrupt and prolonged the litigation; and 2) Defendants' disregard of the Court's prior Orders. *Id*. On August 15, 2022, this Court entered an Order Granting Motion to Withdraw as Counsel for Defendants. (ECF No. 29).

The Court's above-described Order states, in part, "Defendants must obtain counsel by August 30, 2022, or default will be entered against Defendant DLY Case Management." Defendants failed to comply with this Court's Order, as new counsel never entered a notice of appearance with the Court. Furthermore, as of the date of this Motion, DAINELYS CRUZ individually and MAIKEL LOPEZ, SR., have not filed any notice of intent to proceed with this litigation pro se. The Defendants have ultimately abandoned litigation without any notice or cooperation to this litigation.

### 2. An Employment Relationship Existed Between Plaintiffs and Defendants

In the present case, Plaintiffs allege that they were employed by Defendants as "case managers" within the five (5) years preceding the filing of this complaint. (ECF No. 1 at ¶11). As Defendants have failed to participate in this case, it is proper for the Court to determine FLSA damages based upon Plaintiff's Sworn Declaration. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Brown v. Everest Moving & Storage, Inc.*, No. 12-62530-CIV, 2013 WL 12126001, at *2 (S.D. Fla. Aug. 20, 2013); *Olson v. Superior Pontiac-GMC, Inc.*, 776 F.2d 265, 266 (11th Cir. 1985) (noting employer's burden to produce time records after employee has established, she has not been paid the required wages). Moreover, by having failed to respond to

Plaintiffs' Complaint, Defendants admit that Plaintiffs were employees for Defendants as defined under the FLSA (ECF No. 1 at ¶¶ 11-15). Therefore, Plaintiffs have adequately established that an employment relationship existed between Plaintiffs and Defendants.

3. **Defendants are Employers Covered by and Subject to the FLSA**

To establish a claim the FLSA, a plaintiff must allege one of two types of coverage under the Act exists: (1) "enterprise coverage," which applies to the defendant employer, or (2) "individual coverage," which applies to the plaintiff employee. *Martinez v. Palace*, 414 F. App'x 243, 244-45 (11th Cir. 2011) (*citing* 29 U.S.C. §§ 206(a), 207(a)(1)); *see also Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006). For "enterprise coverage" to apply under the FLSA, the employer must have "employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). Furthermore, the employer must have annual gross volume of sales made or business done in excess of $500,000.00 during the plaintiff's employment. See 29 U.S.C. § 203(s)(1)(A)(ii).

i. *Defendant DLY is a covered enterprise*

Here, Plaintiffs alleged that "all times material to this Complaint, Defendant DLY CASE MANAGEMENT SERVICES, LLC, had two (2) or more employees who have regularly sold, handled, or otherwise worked on goods and/or materials that have been moved in or produced for commerce which as employees subject to the provisions of the FLSA, 29 U.S.C. § 207." (ECF No. 1 at ¶¶ 17-18); Plaintiffs further contended that DLY CASE MANAGEMENT SERVICES, LLC, "has had individually and/or in combination a gross revenue which exceeds $500,000 for

each of the past three (3) years and utilizes goods in the flow of commerce across state lines." (Id. at ¶ 20).

At this stage, these allegations are sufficient to plead both prongs of enterprise liability. *See, e.g., Ceant v. Aventura Limo. & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("[p]lainly, [plaintiff] need not know for certain, nor prove, that [defendant] has annual gross revenues exceeding $500,000 at the pleading stage, especially since that information is likely in [d]efendants' hands, not his."); *see also Chambers v. Bank of Am. Merch. Servs., LLC*, No. 18-61464-CIV, 2018 WL 7371879, at *2 (S.D. Fla. Sept. 25, 2018) (holding that plaintiff's allegation that defendant "had two (2) or more employees handling or otherwise working with telephones, computers and other office supplies and materials that had been moved in commerce, which were used directly in furtherance of Defendant's commercial activity of running a bank," was "adequate at the pleading stage" to establish enterprise coverage). Therefore, Plaintiffs adequately pleaded the existence of FLSA coverage as to Defendant DLY CASE MANAGEMENT SERVICES, LLC.

*ii.   Defendants CRUZ and LOPEZ are  Joint Employers of Plaintiffs Under the FLSA*

The FLSA defines "employer" as "includ[ing] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Eleventh Circuit has held that "the FLSA contemplates that a covered employee may file suit directly against an employer that fails to pay him the statutory wage or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)(*citing Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)). Therefore, "a corporate officer with operational control of a corporation's covered enterprise is

an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Id.* at 637-38 (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). "'Operational control means management of day-to-day business functions such as employee compensation, 'direct responsibility for the supervision' of employees, or general operations.'" *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1332 (S.D. Fla. 2016) (quoting *Baltzley v. Berkley Grp., Inc.*, 2010 WL 3505104, at *2 (S.D. Fla. Sept. 3, 2010)).

In the instant case, Plaintiffs have alleged that Lopez : (i) "is the CEO of DLY; (ii) "exercised operational control over" the activities of DLY; and (iii) "controlled the manner in which Plaintiffs performed their work, and the pay that Plaintiff was to receive." (ECF No. 1 ¶¶ 21-22). Similarly Plaintiffs have alleged that Cruz : (i) "is a manager and administrator of DLY; (ii) "exercised operational control over" the activities of DLY; and (iii) "controlled the manner in which Plaintiffs performed their work, and the pay that Plaintiff was to receive." (ECF No. 1 ¶¶ 23-24). Defendants Cruz and Lopez, as Defendant DLY's corporate officer and managers, acted on behalf of Defendant DLY and consequently asserted control of Plaintiffs work conditions. Therefore, Plaintiffs are entitled to judgment against Lopez and Cruz as a joint employers.

### 4.  Plaintiffs Performed Some Work for Which he was not Properly Compensated

Plaintiffs alleged that they were employed by Defendants, as case managers and were covered employees under the Act, and were not paid the minimum wage or overtime wage required by the FLSA. (ECF No. 1 at ¶¶ 26-30). As the Defendants have failed to participate in this case, it is proper for the Court to determine FLSA damages based upon Plaintiffs' Affidavits. Attached hereto as Exhibit 1. (hereinafter "Pl. Aff."). *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946); *Brown v. Everest Moving & Storage, Inc.*, No. 12-62530-CIV, 2013 WL 12126001, at *2 (S.D. Fla. Aug. 20, 2013); *Olson v. Superior Pontiac-GMC, Inc.*, 776 F.2d 265,

266 (11th Cir. 1985) (noting employer's burden to produce time records after employee has established, she has not been paid the required wages).

## B. <u>LIABILITY UNDER THE FMWA</u>

The FMWA requires employers to pay eligible employees an hourly minimum wage. See Fla. Stat. § 448.110. Fla. Stat. § 448.110 (6)(a) states that "prior to bringing any claim for unpaid minimum wages, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action." The employer then has  15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved. Fla. Stat. § 448.110 (6)(b).

Plaintiffs' Complaint states that Plaintiffs provided written notice of their unpaid wages on October 13, 2021 and October 15, 2021. ECF No. 1 at ¶10. Seventy-two days later, Plaintiffs initial complaint was filed. *See* ECF No. 1.

## C. <u>DAMAGES.</u>

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). An employer who violates the FLSA is liable to the employee affected in the amount of his unpaid wages "and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  The FLSA additionally authorizes an award of attorney's fees to the prevailing plaintiff in a proceeding to enforce its wage provisions.  *Id.*

### 1. Minimum Wage Damages

The Complaint alleges Plaintiffs were employed by Defendant as Case Managers. ECF No. 1 at ¶ 27. Defendants established a bi-weekly pay period, such that the employees were supposed to get paid once a week for the fourteen (14) day period ending immediately preceding. However, since approximately May 2021, the wages due on the regularly established pay day began to arrive late and were piecemeal, such that the amounts due would be paid late and ultimately not at all. ECF No. 1 at ¶ 29. Specifically, Defendants failed to compensate Plaintiffs their wages for the worked performed since on or about June 28, 2021, through their separation of employment. ECF No. 1 at ¶ 30. Furthermore, the number of hours for which Plaintiffs were compensated during their employment, was virtually always an under-reporting of the actual amount of time Plaintiffs worked since Plaintiffs a were compensated based upon billable hours that corresponded with the work performed rather than the actual hours worked. ECF No. 1 at ¶ 32. At all relevant times, Defendants were not paying Plaintiffs for the time they spent attending meetings and or trainings and/or other non-billable related duties. ECF No. 1 at ¶ 33.

### i. *Plaintiff Ricardo Andreu -*

Andreu  worked for the Defendants as a Case Manager from on or about April 2017, through November 5, 2021. Exhibit A at ¶3. During this time, his primary duties consisted of conducting initial assessments of clients, provide assistance to clients, prepare case notes, and time sheets, and performing other related duties. *Id.* Andreu was to be compensated at $18.00/hr and regularly worked between 50-55 hours a week. *Id. at ¶¶ 4-6.* Based upon a 50-hour workweek, Andreu estimates that Defendants owe him at least $25,254.00 in unpaid wages. Specifically, Andreu contends he is owed at least $6,854.00(2 hrs. x $23.00/hr x 149 weeks) in

unpaid minimum wages representing the time spent performing non-billable work during the relevant time (December 28, 2018 November 2, 2021).  Id. at ¶7. Additionally, starting on June 28, 2021, the wages due on the regularly established pay day, began to arrive late and were provided piecemeal, such that the amounts due would be paid late and ultimately not at all. Starting on July 12, 2021, and until his termination on November 2, 2021, Andreu was not compensated at all for the hours worked on behalf of the Defendants. Therefore, Andreu estimates he is owed at least $18,400.00 (50 hrs. x 16 weeks x $23.00/hr) in unpaid wages for the period of time. Id. at ¶8.

### ii.  Plaintiff Carmen Celestrin

Celestrin worked for the Defendants as a Case Manager from on or about May 30, 2018, through September 26, 2021. Exhibit B at ¶3. During this time, her primary duties consisted of conducting initial assessments of clients, provide assistance to clients, prepare case notes, and time sheets, and performing other related duties.  *Id.* Celestrin was to be compensated at $27.00/hr and regularly worked between 50-55 hours a week. *Id. at ¶¶ 4-6.* Based upon a 50-hour workweek, Celestrin estimates that Defendants owe her at least $25,920.00 in unpaid wages as follows. Celestrin contends he is owed at least $7,020.00(2 hrs. x $27.00/hr x 130 weeks) in unpaid minimum wages representing the time spent performing non-billable work during the relevant time (December 28, 2018 June 28, 2021). Id. at ¶7. Additionally, starting on June 28, 2021, the wages due on the regularly established pay day, began to arrive late and were provided piecemeal, such that the amounts due would be paid late and ultimately not at all. Starting on June 28, 2021, and until her separation of employment on September 26, 2021 on November 2, 2021, Celestrin was not compensated at all for the hours worked on behalf of the Defendants. Therefore, Celestrin estimates she is

owed at least $18,900.00 (50 hrs. x 14 weeks x $27.00/hr) in unpaid wages for the period of time. Id. at ¶8.

### iii.  Plaintiff Francisco Maldonado

Maldonado  worked for the Defendants as a Case Manager from on or about July 2019 through September 26, 2021. Exhibit C at ¶3. During this time, his primary duties consisted of conducting initial assessments of clients, provide assistance to clients, prepare case notes, and time sheets, and performing other related duties.  *Id.* Maldonado was to be compensated at $27.00/hr and regularly worked between 50-55 hours a week. *Id. at ¶¶ 4-6.* Based upon a 50-hour workweek, Maldonado estimates that Defendants owe him at least $19,116.00 in unpaid wages based on the following:

Maldonado contends he is owed at least $5616(2 hrs. x $27.00/hr x 104 weeks) in unpaid minimum wages representing the time spent performing non-billable work during the relevant time (July 2019-June 28, 2021).  Id. at ¶7. Additionally, starting on June 28, 2021, the wages due on the regularly established pay day, began to arrive late and were provided piecemeal, such that the amounts due would be paid late and ultimately not at all. Starting on July 12, 2021, and until his termination on September 26, 2021, Maldonado was not compensated at all for the hours worked on behalf of the Defendants. Therefore, Maldonado estimates he is owed at least $13,500.00 (50 hrs. x 10 weeks x $27.00hr) in unpaid wages for the period of time. Id. at ¶8.

### 2.  Overtime Wages Damages

Plaintiffs' complaint alleges that they were not being compensated at time and a half for the overtime hours they worked during their employment. Plaintiffs further contend that at all times pertinent to this action, Defendants failed to comply with 29 U.S.C. §§ 201-219 in that

Plaintiffs performed services for Defendants for which no provision was made to properly pay for those hours worked over forty (40) in each workweek.

Based upon the applicable minimum wage, Plaintiff Ricardo Andreu estimates he is owed a minimum of approximately $18,055.00 (0.5 x $23.00 p/h x 10 hrs x 157 weeks) in overtime wages. See Exhibit A at ¶10.

Based upon the applicable minimum wage, Plaintiff Carmen Celestrin estimates she is owed a minimum of approximately $21,195.00 (0.5 x $27.00 p/h x 10 hrs x 157 weeks) in overtime wages. See Exhibit B at ¶10.

Based upon the applicable minimum wage, Plaintiff Francisco Maldonado estimates he is owed a minimum of approximately $15,795.00 (0.5 x $27.00 p/h x 50 hrs x 117weeks) in overtime wages. See Exhibit C at ¶10.

### 3. Liquidated Damages

If a plaintiff establishes an FLSA violation, then the district court must award liquidated damages unless the employer proves "that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'" *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) (quoting *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1352-53 (5th Cir. 1980), *cert.* 7 *denied*, 449 U.S. 1077 (1981)); *see also* 29 U.S.C. §260. In other words, an employer who seeks to avoid liquidated damages as a result of violating the FLSA bears the burden of proving that its violation was both in good faith and predicated upon reasonable grounds. *See Joiner*, 814 F. 2d at 1537.

14

Here, since Defendants have not answered or otherwise responded to the Complaint, Defendants have not shown that liquidated damages are inappropriate. *See* 29 U.S.C. § 260. Accordingly, Plaintiffs should be awarded liquidated damages.

### 4. Entitlement to Attorney's Fees and Costs

The FLSA provides for the award of reasonable attorney's fees and costs to a prevailing Plaintiff. 29 U.S.C. § 216(b). This includes parties who prevail on default judgment against a defendant employer. *Simon v. Leaderscape LLC*, 565 F. Supp. 2d 1332, 1334 (S.D. Fla. 2008). The Fair Labor Standards Act, 29 U.S.C. §216(b), authorizes an award of attorneys' fees to the prevailing plaintiff in any proceeding to enforce 29 U.S.C. §206 (minimum wage and overtime wages).

### i. Attorneys' Fees

A prevailing plaintiff's attorney's fee is mandatory. *Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases."); *Kreager v. Soloman & Flanagan, P.A.*, 775 F. 2d 1541, 1542 (11th Cir. 1985); *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291 (S.D. Fla. 2006). A plaintiff who receives at least some relief on the merits of his claim is said to have prevailed. *Buckhannon Board and Care Home Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 603-04 (2001) (citations omitted). Even an award of nominal damages satisfies this standard. *Id*. Furthermore, "[p]revailing Plaintiff, which may include Plaintiff who favorably settle their cases, are entitled to attorney's fees under the FLSA." *Small v. Richard Wolf Medical Instruments Corp.*, 264 F. 3d 702, 707 (7th Cir. 2001) (citing, 29 U.S.C. § 216(b)) (other citations omitted); *see also, The Ocean Conservancy, Inc. v. National*

*Marine Fisheries Order Service*, 2004 U. S. App. Lexis 16737, *8 (9th Cir. 2004) (post-Buckhannon, a party still prevails when it enters into a legally enforceable agreement with defendant) (additional citations omitted).

This is an FLSA overtime case. To determine the amount of fees due, courts use the lodestar approach and multiply the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). When considering what constitutes a reasonable hourly rate, the court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). That a plaintiff succeeds in only a limited way does not strip her of prevailing-party status, but the degree of her success is "the most critical factor in determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992) (quotation marks omitted); see also *Hensley*, 461 U.S. at 436. There is a "strong presumption" that the lodestar reflects a reasonable sum the attorneys deserve. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986). If the Court finds that the number of hours claimed is unreasonably high, the Court may either conduct an hour-by-hour analysis or it may reduce the hours using an across-the-board cut. *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

When the number of compensable hours and the hourly rate are reasonable, a downward adjustment to the lodestar is merited only if the prevailing party was partially successful in its efforts. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993).

Plaintiffs' counsel, Nathaly Saavedra, Esq.  has been a labor and employment attorney for over six years, and who is known in the South Florida legal community for performing respectably in labor and employment matters.  Ms. Saavedra has been approved for an hourly rate of $350.00. According to the terms of the Agreement for representation, Plaintiffs' attorneys are allowed to bill an hourly rate for their time.  While it is unknown whether other attorneys had "passed on" the opportunity to represent the Plaintiff, this is the first time that undersigned counsel has represented the Plaintiffs in any capacity. The time expended in prosecuting Plaintiffs claims is not duplicative in nature and does not include time for billing for administrative tasks. Plaintiffs' counsel's time records are attached hereto as Exhibit D.  The total amount of attorneys' fees claimed for Plaintiffs is $6,803.50.

      i.      *Costs under 28 u.s.c. § 1920.*

The Supreme Court has held that in awarding costs, courts may not exceed those costs available in 28 U.S.C. § 1920 absent explicit contrary authorization in an applicable substantive statute. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Courts in the Eleventh Circuit read this to require that cost awards under the FLSA be limited to the costs enumerated in § 1920.[1] *See, e.g. Manriquez v. Manuel Dias Farms, Inc.,* 2002 WL 1050331 at *3, 2002 U.S. Dist. LEXIS 9915 at *9 (S.D.Fla. May 23, 2002) (denying mediation costs in an FLSA case after noting that "[a]bsent a contrary, explicit statutory provision, the Court may tax only the [costs listed in § 1920.]"); *Helms v. Cent. Fla. Reg'l Hosp.,* 2006 WL 3858491 at *3, 2006 U.S. Dist. LEXIS 92994 at *8 (M.D.Fla. Dec. 21,

2006) ("In an FLSA action, it is error to award costs in excess of those permitted by § 1920."); *Glenn v. Gen. Motors Corp.,* 841 F.2d 1567, 1575 (11th Cir.1988) (denying expert witness fees under 29 U.S.C. § 216(b) and noting that nothing suggested that Congress intended "costs" in section 216(b) to include anything more than the costs listed in § 1920.). Therefore, both parties are only entitled to recover those costs listed as taxable under § 1920. The costs properly recoverable under 28 U.S.C. § 1920 are as follows:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees and expenses and costs of special interpretation services under section 1828 of this title.

  28 U.S.C. § 1920.

*James v. Wash Depot Holdings, Inc.¸* 242 F.R.D. 645 (S.D. Fla. 2007).

In the cause of action at bar, Plaintiff,  claims $603.30 in recoverable costs.  These costs fall into the above-described categories.   See attached Exhibit D, Plaintiff's Bill of Costs.

SPACE INTENTIONALLY LEFT BLANK

18

WHEREFORE, Plaintiffs respectfully request that this Court re-opens this case and enter a Default Final Judgment against Defendants and grant such other relief as this Court deems just and proper.

Dated: October 28, 2024          Respectfully submitted,

_/s/Nathaly Saavedra_
Nathaly Saavedra, Esq.
Florida Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Florida Bar No. 115784
Email: juan@peregonza.com
PEREGONZA THE ATTORNEYS, PLLC
5201 Blue Lagoon Drive, Suite 290
Miami, Florida 33126
Telephone: (786) 650-0202
Facsimile: (786) 650-0200

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on <u>October 28, 2024</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF and via USPS First-Class Mail for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Nathaly Saavedra</u>     _
Nathaly Saavedra, Esq.

20

## SERVICE LIST

Nathaly Saavedra, Esq.
Florida Bar No. 118315
Email: nathaly@peregonza.com
Juan J. Perez, Esq.
Florida Bar No. 115784
Email: juan@peregonza.com
PEREGONZA THE ATTORNEYS, PLLC
5201 Blue Lagoon Drive, Suite 290
Miami, Florida 33126
Telephone: (786) 650-0202
Facsimile: (786) 650-0200


*Defendants*:

DLY Management Services LLC
c/o MAIKEL LOPEZ, SR, Registered Agent
12350 SW 132nd Court, #110
Miami, Florida, 33186

Method of Service: U.S. Mail

DAINELYS CRUZ
2541 SW 145th Avenue
Miami, Florida, 33175
12350 SW 132nd Court, #110
Miami, Florida, 33186

Method of Service: U.S. Mail


MAIKEL LOPEZ, SR
 2541 SW 145th Avenue
Miami, Florida, 33175
12350 SW 132nd Court, #110
Miami, Florida, 33186

Method of Service: U.S. Mail

Defendants